UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIFFANY R. CHASTAIN,

        Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

DECISION & ORDER

19-CV-0017MWP

**PRELIMINARY STATEMENT**

  Plaintiff Tiffany R. Chastain ("Chastain") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 16).

  Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 12, 14). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.    The ALJ's Decision

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that Chastain had not engaged in substantial gainful activity since September 16, 2014, the alleged onset date. (Tr. 17).[1] At step two, the ALJ concluded that Chastain had the severe impairments of "lumbar spine disorder status-post fusion[,] cervical and thoracic spine disorders[,] [and] shoulder disorder." (Tr. 18). The ALJ also found that Chastain suffered from appendicitis, hand pain indicative of carpal tunnel syndrome, depression, anxiety, and marijuana use, but that those impairments were nonsevere. (*Id.*). At step three, the ALJ determined that Chastain did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 20).

The ALJ concluded that Chastain retained the RFC to perform a full range of light work but with certain limitations. (Tr. 21). Specifically, the ALJ found that Chastain needed to be afforded the opportunity to change positions for one to two minutes as often as hourly; could not climb ladders, ropes, or scaffolds, engage in crawling activities, or perform overhead reaching tasks with her right upper extremity; could frequently, but not constantly, perform

---

[1] The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

4

upper extremity reaching, handling, and fingering tasks; could not be exposed to dangerous work hazards, such as unprotected heights and exposed moving machinery; needed to be limited to detailed, but not complex, work tasks not requiring a fast assembly quota pace; and would be off task up to five percent of the workday due to symptom exacerbations. (*Id.*). At steps four and five, the ALJ found that Chastain was unable to perform any of her past relevant work, but that, based on Chastain's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that Chastain could perform, such as office helper and cashier II. (Tr. 25-26). Accordingly, the ALJ found that Chastain was not disabled. (Tr. 26).

### III.    Chastain's Contentions

Chastain contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 12, 15). First, Chastain challenges the ALJ's "reject[ion]" of several "disability opinions" offered by Chastain's treating neurosurgeon, Ryan DenHaese ("DenHaese"), MD, and her treating board-certified physician assistant Joseph Beang[2] ("Beang"), RPA-C, arguing that the ALJ failed to provide adequate reasons for discounting these opinions. (Docket # 12-1 at 10-14). Second, Chastain maintains that the ALJ's physical RFC determination was not supported by substantial evidence. (*Id.* at 14-20). Specifically, Chastain contends that the ALJ's discounting of the medical source statement of consultative examiner Abrar Siddiqui ("Siddiqui"), MD, created an evidentiary gap in the record, which resulted in a physical RFC determination unsupported by any medical opinion and based solely on the ALJ's lay interpretation of the medical evidence.

---

[2]  Chastain refers to this individual throughout her papers as Joseph "Beeng." (*See generally* Docket # 12-1).  The medical record indicates that this individual's last name is "Beang." (*See*, *e.g.*, Tr. 300, 311).

5

(*Id.* at 16-20). She also challenges the ALJ's consideration of Siddiqui's medical opinion on the grounds that it was "stale." (*Id.* at 16).[3]

IV. **Analysis**

    A. **The ALJ's Physical RFC Determination**

        I turn first to Chastain's argument that the ALJ's physical RFC determination was not supported by substantial evidence.[4] (Docket # 12-1 at 14-20). This argument relies primarily on two related contentions: first, that Siddiqui's consultative opinion was stale in light of subsequent developments in Chastain's medical record; and second, that, as a result, the record contained no useful assessment of Chastain's functional abilities upon which the ALJ could base her physical RFC determination. (*Id.* at 16-18). Specifically, Chastain contends that Siddiqui's examination was unreliable based on records showing that her back and neck impairments worsened after the examination and that she developed a right shoulder impairment. (*Id.* at 16).

        On August 10, 2015, Chastain presented to consultative examiner Siddiqui for an internal medicine examination, complaining of low back pain and arthritis in both of her hands and her neck. (Tr. 325-28). By that time, Chastain had been recovering for several months from a December 3, 2014 L5-S1 anterior discectomy and L5-S1 anterior arthrodesis, which addressed

---

[3] I note the inconsistency in Chastain's argument that Siddiqui's August 2015 opinion is stale, but the "disability opinions" rendered by DenHaese and Beang during the period from September 2014 through June 2015 should have been afforded more weight. (*See* Docket # 12-1 at 10-14).

[4] Chastain's contentions relate only to the physical portion of the ALJ's RFC determination, even though the RFC also contains limitations related to Chastain's mental impairments. Thus, I only address the RFC as it relates to Chastain's physical limitations. *See*, *e.g.*, *Cottrell v. Comm'r of Soc. Sec.*, 2019 WL 201508, *2 n.3 (W.D.N.Y. 2019) ("[claimant's] RFC determination also included several mental limitations; however, the [c]ourt focuses its opinion on [claimant's] physical limitations because she argues only that the ALJ's physical RFC findings lack substantial evidence").

6

Chastain's lumbar spondylosis, lumbar disc herniation, low back pain, and lumbar radiculopathy, and which was performed by DenHaese and Dr. Timothy Rasmusson, MD, with the assistance of Beang. (Tr. 295-99).

Siddiqui noted Chastain's eleven-year history with lower back pain, her diagnosed degenerative joint disease, and her low back surgery in December 2014. (Tr. 325). Despite completing physical therapy after her surgery, Chastain still complained of low back pain, which was aggravated by exertional activity and alleviated by rest or medication. (*Id.*). Chastain's arthritis was localized in her hands and neck, and diagnostic imaging demonstrated that she had carpal tunnel syndrome in both areas. (*Id.*). With respect to activities of daily living, Chastain stated that she was capable of cooking, cleaning, and doing laundry two to three times a week, shopping once a week, but could not perform childcare. (Tr. 326). She showered five times a week, dressed herself daily, and enjoyed watching television, reading, and going out to socialize with friends. (*Id.*).

On physical examination, Chastain appeared in no acute distress, had normal gait, could walk on heels and toes without difficulty and fully squat, had normal stance, used no assistive devices, needed no help changing for the examination or getting on and off the examination table, and was able to rise from a chair without difficulty. (*Id.*). Her cervical spine showed full flexion, extension, and lateral flexion bilaterally, and full rotary movement bilaterally. (Tr. 327). Chastain exhibited limited range of motion in her low back due to pain, and Siddiqui noted that her surgery contributed to this limited range of motion. (*Id.*). Straight leg tests were negative. (*Id.*). She had full range of motion in her shoulders, elbows, forearms, and wrists, bilaterally, and full range of motion in her hips, knees, and ankles, bilaterally. (*Id.*). Her joints were stable and nontender, she had no sensory deficit, full strength in her upper and

lower extremities, and full grip strength, bilaterally. (*Id.*). Siddiqui diagnosed Chastain with low back pain and arthritis in her bilateral hands and neck, and opined that her prognosis was fair. (Tr. 328). Siddiqui also opined that Chastain had "mild limitations in [her] ability to sit, stand, climb, push, pull, or carry heavy objects." (*Id.*).

Close to two years after Siddiqui's consultative examination, Chastain developed right shoulder pain. (Tr. 811, 815). On June 5, 2017, diagnostic images of Chastain's right shoulder showed "[e]arly irregularity . . . suggesting degenerative disease at the acromioclavicular joint." (Tr. 811). On June 16, 2017, Chastain reported to Nurse Practitioner Janelle Colquhoun ("Colquhoun") at a primary care appointment that she had been experiencing right shoulder pain for about a month. (Tr. 815). Colquhoun noted that Chastain's right shoulder was tender to palpation at the AC joint with limited active range of motion, that Chastain refused to perform the scratch test due to pain, had difficulty with upward shoulder rotation due to pain, and that she was unable to adduct her arm across her chest due to pain. (Tr. 816). Her motor strength remained normal in her upper extremities. (*Id.*).

On July 6, 2017, Chastain presented for a follow-up appointment for right shoulder pain. (Tr. 821-22). Chastain complained of continued right shoulder pain with decreased range of motion, for which medication and supportive measures, such as arm exercises, provided minimal pain relief. (Tr. 821). On physical examination, Chastain exhibited tenderness to palpation in her right AC joint and was unable to perform the scratch test due to pain. (*Id.*). Her "lateral[,] extens[ion,] and flexion" had improved. (*Id.*). During an August 10, 2017 appointment with Colquhoun, no changes were noted, but Colquhoun did refer Chastain for physical therapy for her right shoulder pain. (Tr. 825-26). Similarly, at an appointment with Colquhoun on September 13, 2017, Chastain again reported continued decreased range of motion

and pain in her right shoulder, with range of motion that was unchanged and no improvement with supportive measures. (Tr. 828). Physical examination findings remained the same. (*Id.*).

Chastain underwent physical therapy for her right shoulder pain at Advantage Physical Therapy, PC, on September 19, 2017. (Tr. 831-33). At the time of the appointment, Chastain reported to Rachel Sisson ("Sisson"), DPT, that the severity of her right shoulder pain was 0/10, but that it could reach 7/10 at its worst. (Tr. 831). She described the pain as burning and sharp, and stated that it disturbed her sleep and that it caused limited range of motion, tenderness, and weakness. (*Id.*). She also reported that although her right shoulder had previously caused no functional limitations, it now caused difficulties with her activities of daily living, her ability to carry and lift, fasten her bra, be mobile, and push and pull. (*Id.*). On physical examination, Chastain demonstrated tenderness at the AC joint and consistently diminished strength and range of motion in her right shoulder compared to her left shoulder. (Tr. 831-32). Apprehension test was positive on the right shoulder, and Chastain tested positive for Hawkins-Kennedy impingement. (Tr. 832). Sisson assessed Chastain with "good" rehabilitation potential, but noted that her associated impairments included decreased activities of daily living, decreased strength, decreased flexibility, increased pain, decreased joint mobility/integrity, poor body mechanics, and decreased range of motion. (*Id.*).

Less than a month later, at the October 2, 2017 hearing before the ALJ, Chastain continued to complain of right shoulder pain. (Tr. 46 ("I have a lot of problems with my neck, and now my should[er] also, [for] which I am currently in physical therapy")). Chastain testified that she could not "really lift much of anything off of the ground" and could carry "maybe five pounds." (Tr. 50). She also stated that because of her shoulder pain she could not "reach at all with [her] right hand" and that her right arm hurt "even [when] lift[ing] it to [her] chest, or []

push[ing] it back," which presented problems because she was right-handed.  (Tr. 51).  In fact, Chastain told the ALJ that her right shoulder was "the most severe" issue she was dealing with at the time of the hearing.  (Tr. 55).

This documented history of Chastain's right shoulder impairment, an impairment which the ALJ found to be severe at step two (Tr. 18), demonstrates a deterioration of Chastain's condition subsequent to Siddiqui's August 2015 examination, and indeed subsequent to most of the medical record, which predates May/June 2017.  In addition, the developments pertaining to Chastain's right shoulder plainly contradict Siddiqui's findings that Chastain had full range of motion in her shoulders, bilaterally, and that her joints were stable and nontender.  (Tr. 327).  Furthermore, Siddiqui's examination and medical source statement did not – because they could not – take into account Chastain's alleged limitations associated with her right shoulder pain.  Both the ALJ and the Commissioner recognize this.  (*See* Tr. 24 (ALJ giving "less weight" to Siddiqui's "opinion of only mild limitations because the record as a whole, including [Chastain's] history of lumbar spine surgery *and updated physical therapy records documenting right shoulder abnormalities*, support[s] a finding that [Chastain] is more limited tha[n] Dr. Siddiqui opined") (emphasis supplied); *see also* Docket # 14-1 at 14-15 (the "ALJ correctly noted that *subsequent evidence undermined Dr. Siddiqui's findings regarding arm use*") (emphasis supplied)).

Accordingly, I find that Siddiqui's examination and medical source statement are stale at least as they relate to Chastain's severe right shoulder impairment.  *See Whitsett v. Berryhill*, 2019 WL 156261, *4 (W.D.N.Y. 2019) ("[a] medical opinion may be stale if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision") (quotations omitted); *Vazquez v. Saul*, 2019 WL 3859031, *3-4 (W.D.N.Y. 2019)

("[i]n other words, the mere passage of time does not render an opinion stale, but significant developments in an individual's medical history after the examination might[;] . . . the opinion [from the consultative examiner] is clearly stale with regard to [claimant's] bilateral carpal tunnel syndrome [that was diagnosed more than two years after opinion was rendered][;] . . . [consultative examiner] did not opine about any limitations in [claimant's] hand and finger dexterity; instead, [consultative examiner] found '5/5' bilateral grip strength[;] [s]o there was a significant deterioration in [claimant's] condition after [consultative examiner's] exam[;] [a]nd [nurse's] diagnosis and referral for treatment of carpal tunnel syndrome renders [consultative examiner's] opinion stale regarding possible limitations due to that ailment") (citations and quotations omitted).

I am also unpersuaded by the Commissioner's argument that the ALJ's physical RFC finding "included significant postural limitations to account for any subsequent limitations." (Docket # 14-1 at 15). The ALJ purported to accommodate Chastain's right shoulder impairment by precluding her from "all overhead reaching tasks with the right upper extremity" and limiting her to "frequent, but not constant, upper extremity reaching, handling, and fingering tasks." (Tr. 21). As Chastain points out, however, the ALJ arrived at these limitations without a medical opinion and seemingly based upon her lay interpretation of the medical evidence and Chastain's hearing testimony. (Docket # 12-1 at 18).

As a general matter, although an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence," *Wilson v. Colvin*, 2015 WL 1003933, *21

11

(W.D.N.Y. 2015) (alteration and citation omitted). "Accordingly, although the RFC determination is an issue reserved for the Commissioner, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' as a general rule, the Commissioner 'may not make the connection himself.'" *Nanartowich v. Comm'r of Soc. Sec.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)).

Here, Chastain developed her right shoulder impairment after Siddiqui's examination (and much of the medical record); despite treatment records from June through September 2017, there are no medical records or opinions that provide a clear or useful assessment of the functional limitations associated with Chastain's shoulder impairment. To the extent the ALJ relied on Chastain's hearing testimony in formulating the RFC, the ALJ's RFC did not fully account for Chastain's alleged limitations. For example, the RFC permits Chastain to perform frequent reaching with her upper extremities (Tr. 21), yet Chastain testified that she was unable to perform any reaching with her right arm (Tr. 51), and the ALJ does not explain this discrepancy. Given that the treatment notes merely diagnosed Chastain's right shoulder impairment and did not "relate those diagnoses to specific residual functional capabilities," it was error in this case for the ALJ to "make the connection [her]self." *Nanartowich v. Comm'r of Soc. Sec.*, 2018 WL 2227862 at *9.

In sum, I conclude that the ALJ based at least some portions of her RFC finding on her own lay reading of the record and that the RFC is therefore not supported by substantial

evidence. Remand is thus required for the ALJ to obtain an up-to-date medical assessment of Chastain's functional capacity in light of her several severe impairments.[5]

B.      **Chastain's Remaining Contention**

Chastain also contends that the ALJ failed to comply with the treating physician rule as it pertains to several statements provided by DenHaese and Beang towards the end of 2014 and throughout the first half of 2015, which Chastain characterizes as "disability opinions." (Docket # 12-1 at 10-14). Given my finding that the ALJ's physical RFC determination is not supported by substantial evidence, I do not address whether the ALJ complied with the treating physician rule in evaluating these statements. *See*, *e.g.*, *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 260-61 (W.D.N.Y. 2018) (collecting cases); *see also Stein v. Colvin*, 2016 WL 7334760, *3 n.2 (W.D.N.Y. 2016) (remanding where RFC determination was not supported by substantial evidence because ALJ based RFC on raw medical evidence and his own lay opinion; "[plaintiff] advances other arguments that she believes require reversal of the Commissioner's decision[;] [h]owever, because this [c]ourt disposes of this matter on the improper RFC determination, those arguments need not be reached").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 14)** is **DENIED**, and Chastain's motion for judgment on the pleadings

---

[5] This finding is based on my view that Chastain's right shoulder impairment deteriorated after Siddiqui's examination and that the ALJ had no up-to-date medical opinion as to the effect this severe impairment had on Chastain's functional capabilities. I do not reach the issue of whether Siddiqui's opinion, particularly as it relates to Chastain's low back and neck impairments, was stale in its entirety because of Chastain's subsequent medical history. *See Palistrant v. Comm'r of Soc. Sec.*, 2018 WL 4681622, *6 (W.D.N.Y. 2018) ("[j]ust because the claimant continues treatment after an opinion is rendered, however, does not mean that the opinion is stale"). Because remand is warranted to evaluate functional limitations associated with Chastain's subsequent deterioration of her right shoulder, I urge the ALJ to consider obtaining a current medical opinion addressing any functional restrictions associated with Chastain's neck and back impairments.

**(Docket # 12)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
June 12, 2020